# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| ROBERT J. H., | No. 24-cv-15-LTS |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY[1], | |
| Defendant. | |

_____

Robert J. H. ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") in denying his applications for child's insurance benefits[2] ("CIB") under Title II of the Social Security Act, 42 U.S.C. Sections 401-34 and for Supplemental Security Income benefits ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. Sections 1381-85. For the reasons that follow, I recommend that the Commissioner's decision be **affirmed**.

## I. BACKGROUND

Claimant was born in 1998. (AR[3] at 62.) He is a high school graduate. (*Id*. at 225.) Claimant allegedly became disabled due to Marfan Syndrome, social anxiety,

---

[1] On February 19, 2025, Leland Dudek was named the Acting Commissioner of Social Security.

[2] A claimant is entitled to CIB if he or she is 18 years old and has a disability that began before attaining age 22 and which exists at the time of the application. *See* 20 C.F.R. § 404.350(a)(5).

[3] "AR" cites refer to pages in the Administrative Record.

1

scoliosis, and long term affects from spinal fusion. (*Id.* at 224.) Claimant's alleged onset of disability date is January 1, 2012. (*Id.* at 62.) On September 24, 2021, Claimant filed his applications for CIB and SSI. (*Id.* at 60-61). His claims were denied originally on April 20, 2022 (*id.* at 60-79) and were denied on reconsideration on June 9, 2022. (*Id.* at 79-99.) A hearing was held on January 26, 2023, with Claimant and his attorney David Potter[4] appearing by online video before Administrative Law Judge ("ALJ") Matthew Bring. (*Id.* at 31-59.) Vocational Expert ("VE") Deborah Determan also appeared at the hearing telephonically. (*Id.*) Claimant and the VE both testified at the hearing. The ALJ issued an unfavorable decision on March 8, 2023. (*Id.* at 10-23.)

Claimant requested review and the Appeals Council denied review on December 8, 2023. (*Id.* at 1-3.) Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

On February 5, 2024, Claimant timely filed his Complaint in this Court. (Doc. 1.) On July 15, 2024, all briefing was completed, and the Honorable Leonard T. Strand, United States District Court Judge, referred the case to me for a Report and Recommendation.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability when, due to physical or mental impairments, the claimant:

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage

---

[4] Claimant is represented by attorney Anthony J. Olson on the instant Social Security appeal in this Court.

in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A). A claimant is not disabled if the claimant is able to do work that exists in the national economy but is unemployed due to an inability to find work, lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. §§ 404.1566(c), 416.966(c).

To determine whether a claimant has a disability, the Commissioner follows a five-step sequential evaluation process.[5] *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quotation omitted).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id.* If so, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b)).

---

[5] The five-step sequential evaluation applies to claimants "for child's insurance benefits based on disability." 20 C.F.R. § 404.1520(a)(2).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id.* An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id.* §§ 404.1520(c), 416.920(c). The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. §§ 404.1521(b), 416.921(b). These include:

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Id.* (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999) (quotation omitted).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is the most that the individual can do despite the combined effect of all his or her credible limitations. *Id.* §§ 404.1545(a), 416.945(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). A

claimant's RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine his or her RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is any work a claimant performed within the fifteen years prior to his or her application for disability benefits that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* §§ 404.1520(a)(4)(v), 404.1560(c)(2), 416.920(a)(4)(v), 416.960(c)(2). The ALJ must show not only that the claimant's RFC will allow the claimant to do other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

## A.    *The ALJ's Findings*

The ALJ made the following findings regarding Claimant's disability status at each step of the five-step process. Initially, the ALJ determined that Claimant had not attained age 22 as of February 17, 2016. (AR at 13.) The ALJ then applied the first step of the analysis and determined that Claimant had not engaged in substantial gainful activity since February 17, 2016, the date he attained age 18. (*Id.*) At the second step, the ALJ concluded from the medical evidence that Claimant suffered from the following severe impairments: Marfan Syndrome status post aortic root repair and valve replacement, scoliosis status post spinal fusion, and anxiety disorder. (*Id.*) At the third step, the ALJ found that Claimant did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.*) The ALJ evaluated Claimant's claims under

5

listing 1.15 (disorders of the spine), 1.16 (lumbar spinal stenosis), 4.10 (aneurysm of aorta or major branches), and 12.06 (anxiety disorders). (*Id.* at 13-15.) The ALJ also determined that Claimant did not satisfy either the "paragraph B" or "paragraph C" criteria. (*Id.* at 14-15.) At the fourth step, the ALJ determined that Claimant had the following RFC:

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. [§§] 404.1567(a) and 416.967(a) except that he can only frequently, as opposed to constantly, perform handling and fingering. He can never climb ladders, ropes or scaffolds. He can occasionally climb stairs or ramps, balance, stoop, kneel, crouch, and crawl. He can never work around hazards (such as unprotected heights and moving mechanical parts). Mentally, the claimant can perform simple and routine tasks. He can interact with coworkers on an occasional basis. He can interact with the public on a brief and superficial basis.

(*Id.* at 15.) Also at the fourth step, the ALJ determined that Claimant had no past relevant work. (*Id.* at 22.) At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy Claimant could perform, including polisher of eye glass frames, weight tester, and press operator. (*Id.*) Thus, the ALJ concluded that Claimant was not disabled. (*Id.* at 23.)

**B.     *The Substantial Evidence Standard***

The ALJ's decision must be affirmed "if it is supported by substantial evidence in the record as a whole." *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021) (quoting *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law. . . . [T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotations omitted); *see also Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) ("Substantial evidence is less

than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.") (Quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)). Thus, a court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). "An ALJ's decision is 'not outside the zone of choice' simply because [the c]ourt 'might have reached a different conclusion had [it] been the initial finder of fact.'" *Kraus*, 988 F.3d at 1024 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)).

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers "both evidence that detracts from the Commissioner's decision, as well as evidence that supports it." *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)). However, "even if inconsistent conclusions may be drawn from the evidence, the [Commissioner's] decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (providing that a court "may not reverse simply because [it] would have reached a different conclusion than the [Commissioner] or because substantial evidence supports a contrary conclusion").

## III.  DISCUSSION

Claimant alleges that the ALJ committed reversible error by: (1) "failing to consider all of the Claimant's impairments in combination" and failing to properly

consider Claimant's subjective allegations of pain; (2) determining that Claimant "retains the residual functional capacity to perform a limited range of sedentary work"; and (3) failing to fully and fairly develop the medical record. (Doc. 7)

**A.      *Consideration of Claimant's Impairments in Combination***

       ***1.      Parties' Arguments***

Claimant argues that, "[w]hile the ALJ acknowledged that he has severe impairments, he disregarded [Claimant's] allegations of chest pain, back pain, foot pain, the need to alternate between sitting and standing frequently, and the need to lie down frequently." (Doc. 7 at 21.) Claimant maintains that there "are reports from numerous treating and evaluating physicians, including the state agency consultants, corroborating his subjective complaints." (*Id.*) Claimant also argues that the ALJ disregarded his subjective complaints of pain. (*Id.*) Claimant contends that his "complaints of pain are well documented and supported by the medical evidence of record." (*Id.* at 22.) Claimant asserts that the ALJ "offered little explanation for why he found [Claimant's] testimony not to be credible." (*Id.*)

The Commissioner argues that the ALJ properly explained that the "overall record including the objective medical evidence, [Claimant's] routine and conservative treatment, and his admitted activities, did not fully support his subjective complaints." (Doc. 11 at 19.) The Commissioner also points out that Claimant "does not identify any particular functional limitation the ALJ failed to address, or otherwise explain how the ALJ's decision was not supported by substantial evidence." (*Id.*) The Commissioner concludes that "[b]ecause [Claimant] has not made an argument grounded in the record that the ALJ's conclusion is outside the 'zone of choice,' . . . the Court should affirm." (*Id.* at 20.)

## 2. Relevant Law

When assessing a claimant's credibility, "the ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence relating to the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)." *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). In *Polaski*, the Eighth Circuit stated that:

> The [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; [and] (5) functional restrictions.

739 F.2d at 1322. An ALJ is not required to methodically discuss each *Polaski* factor as long as the ALJ "acknowledge[es] and examin[es] those considerations before discounting [a claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (citing *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)). The ALJ, however, may not disregard "a claimant's subjective complaints solely because the objective medical evidence does not fully support them." *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reasons

9

for doing so). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Igo*, 839 F.3d at 731 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

### 3.    Analysis

The record does not support Claimant's argument that the ALJ failed to provide good reasons for discounting Claimant's subjective complaints. The ALJ articulated his reasons for discounting Claimant's allegations at length considering the hearing testimony, Claimant's medical records, and doctors' medical opinions. (AR at 16-21.)

The ALJ provided a thorough summary of Claimant's subjective allegations. *See id.* at 16. The ALJ found that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.*) The ALJ thoroughly considered the intensity and severity of Claimant's symptoms in his discussion of Claimant's RFC. (*Id.* at 20-21.) The ALJ also addressed the relevant *Polaski* factors and considered: (1) the Claimant's daily activities (*Id.* at 17-20); (2) the duration, frequency, and intensity of the condition (*id.* at 17-21); (3) the use of medication (*id.* at 17); (4) precipitating and aggravating factors (*id.* at 17-21); and (5) functional restrictions (*id.*). *See Wildman*, 596 F.3d at 968.

Specifically, the ALJ determined that:

As an initial matter, the undersigned notes that the allegation of disability is inconsistent with the claimant's ability to complete nearly all of a college program in software development. Although the claimant has been unable to finish the final classes due to his social limitations, he has completed all other coursework with acceptable grades and without any reported difficulties (hearing testimony; 12E; 2F/14; 4F; 9F/15, 25). This does not, in and of itself, indicate an ability to perform full-time work, but it definitely suggests that the claimant retains sufficient mental abilities for the performance of simple work. In particular, it shows that the claimant

10

is able to understand, remember, and apply information and complete simple tasks. Given that he has nearly finished a software development degree, it is likely that he is capable of detailed and complex tasks as well as simple ones. However, to accommodate his anxiety and the difficulty focusing due to pain (hearing testimony), the above residual functional capacity limits the claimant to simple work.

As noted above, the claimant has not finished his degree, because his final classes would require working in groups. The undersigned has accounted for this difficulty in the residual functional capacity in the form of limitations to only occasional interaction with coworkers and only brief and superficial interactions with the public. Because the claimant reports that he gets along "well" with authority figures (5E), no limitations on interactions with supervisors are imposed.

The record as a whole does not establish that the claimant's mental impairments impose limitations beyond those mentioned above. Despite claiming to be unable to leave his house alone and having to quit school due to social anxiety, the claimant has sought only limited treatment for his mental health impairments. The "potential for anxiety and/or depression related to having a genetic illness" was noted as early as 2014 (7F/10-22), but the claimant was not formally diagnosed with a social anxiety disorder until September 2019 (2F/15). He has only taken anxiety medications sporadically and has not pursued therapy despite it being offered and recommended (2F/11-15; 4F; 10F; 17F). There is no evidence that he stopped his medications or declined therapy due to financial limitations.

The results of mental status examination are not indicative of debilitating mental symptoms. Prior to September 2020, examination generally failed to reveal any mental abnormalities, let alone disabling ones (see, generally, 2F/17-43; 9F/20-29). Since September 2020, examination has consistently revealed anxiousness, a depressed and blunted affect, and poor eye contact (4F; 10F; 16F; 17F). However, even with these symptoms, the claimant has been able to attend medical appointments outside of his home and engage in limited interactions with medical providers (see, generally, 2F/4-13; 4F; 5F; 14F; 17F; 18F). He has repeatedly been described as cooperative, albeit not particularly talkative (2F/12, 18, 26; 4F; 5F; 9F/16, 21, 26, 30; 10F; 14F). He had difficulty answering questions during the consultative examination in December 2021 but was able to do so without

as much difficulty at the consultative examination in April 2022 (10F; 16F). In both situations, the examiner was not previously known to the claimant.

In other regards, the results of mental status examination have been unremarkable. In treatment notes from 2016 to present, there are no findings of impaired memory, poor concentration, comprehension difficulties, or distractibility (see, generally, 2F/1-45; 4F; 5F; 9F/1-29; 10F; 14F; 16F; 17F; 18F). His judgment has been at least "fair" and at times normal (2F/15, 22; 4F; 17F). He exhibits normal thought content and behavior, and he has not expressed suicidal ideation (2F/15, 22, 29, 34, 43; 10F; 18F). In short, the record is devoid of the type of significant mental abnormalities that would indicate an inability to perform simple work within the continues of the above residual functional capacity.

With respect to the claimant's mental impairments, the undersigned finally notes that his activities of daily living demonstrate that his concentration and focus is sufficient for at least simple work. He reports playing video games for large portions of the day, preparing his own meals, following instructions, and managing his money (5E; 2F/14; 4F; 10F; 17F). He is able to drive a vehicle and go grocery shopping when forced to do so (5E). He completed many college classes during the period under review, as noted previously. Moreover, despite some obvious discomfort about the situation, the claimant was able to provide cogent and relevant responses to the questions asked of him at the hearing (hearing proceedings). His activities of daily living, in combination with his limited treatment and the results of mental status examination, suggest that the claimant would be mentally capable of simple work with minimal social demands.

(AR at 17-18.)

The ALJ also addressed Claimant's physical impairments as they relate to his subjective allegations of pain and disability. The ALJ reviewed Claimant's scoliosis and Marfan Syndrome. (*Id.* at 18.) The ALJ noted that treatment of these impairments was successful and occurred prior to Claimant turning 18 years old. (*Id.*) The ALJ acknowledged that "[t]here is residual aortic insufficiency, but no dilatation, stenosis, or residual aneurysms are present (2F/8, 45; 5F; 8F; 9F/26; 14F). Likewise, there is some

12

'mild' or 'minimal' residual scoliosis (7F/448-449, 464, 481)." (*Id.*) Further, the ALJ stated:

> Since the claimant attained age 18 in February 2016, there has been only limited, conservative treatment for any physical issues. For Marfan Syndrome and the associated cardiac issues, the claimant takes anticoagulant medication and atenolol, has his INR checked as needed, and has yearly follow-ups with a cardiologist (2F/1-43; 9F/1-29; 5F; 13F; 14F). He also attends annual physicals with a primary care provider (2F/11, 17, 25).

(*Id.*) The ALJ noted that at cardiac follow-up appointments in 2016 and 2017, Claimant reported doing "quite well" and the cardiologists agreed that he was doing well and was win stable condition. (*Id.*) The ALJ also explained that:

> At the annual cardiac follow-up visit in 2018, the claimant complained of chest discomfort but describe it as "occasional" and "brief" (9F/20). He still reported "doing quite well" overall, and only a few months later, the claimant again reported "occasional" chest discomfort and specifically noted that it occurred when "standing too long" (2F/17). At that time, neither his primary care doctor nor cardiologist prescribed any treatment or work-up in response to these complaints of occasional chest pain (2F/17; 9F/20-23).

(*Id.*) The ALJ addressed cardiology follow-ups in 2019, 2020, and 2022, and noted that at each appointment Claimant complained of chest discomfort when standing for long periods of time which was relieved with sitting down. (*Id.* at 19.) The ALJ noted that at each appointment the cardiologist ordered Holter monitor work-up and/or a chest CT, and all three work-ups were "unremarkable." (*Id.*)

The ALJ also addressed Claimant's complaints of back and joint pain. (Id.) The ALJ noted that:

> [T]he only treatment documented [for back and joint pain] is over-the-counter Excedrin or Ibuprofen (2F/12, 18, 39; 9F/25, 29). This conservative treatment is consistent with the fact that treatment notes document only sporadic complaints of back pain interspersed between

denials of musculoskeletal concerns (2F/5, 11, 14, 17, 21, 25; 9F/15, 20, 25,29; 14F; 16F).  Although the claimant has been offered a referral to pain management for his back and joint pain, he has not pursued that referral due to a lack of interest (7F/5).  This failure is difficult to reconcile with the allegation that the claimant's pain would require additional breaks and frequent absences from work (18E).

(*Id.*)  The ALJ also found that, after reviewing the medical evidence, Claimant's physical examinations were also "inconsistent with the extreme pain and limitation alleged."  (*Id.*) The ALJ acknowledged Claimant's mild physical impairments but noted that "physical examination has not shown the claimant to have any persistent limitations in strength, to have difficulty with transfers or mobility, or to need an assistive device (see, generally, 2F/1-43; 5F; 7F; 8F; 9F/1-27; 10F; 14F; 16F; 18F)."  (*Id.*)

The ALJ also noted that:

Despite allegations of need to take breaks while seated (hearing testimony; 12E), the claimant has not limited sitting in the residual functional capacity or provided for position changes or extra breaks.  At the consultative examination, the claimant leaned forward while sitting and in so doing was able to remain seated without exhibiting pain behaviors or changing positions (16F).  The claimant testified at the hearing that he could sit for "a couple hours" without getting up.  In the typical full-time work schedule, a break is provided after each 2 hour block of the workday.  Thus, the claimant's self-reported physical abilities are compatible with the sitting required of sedentary work.

(*Id.* at 20.)  Contrary to Claimant's argument that in making this finding, the ALJ improperly employed a "sit and squirm" test, *see* Doc. 7 at 23-24, the ALJ did not such thing.  The ALJ noted that Claimant was able to remain seated during a consultative examination and testified at the hearing that he could sit for 2 hours without changing positions.

The ALJ concluded that:

In summary, since 2016, there has been no significant change to the claimant's cardiac treatment regimen or recommendations except for occasional work-up ordered in response to complaints of chest discomfort when standing too long. There has been no treatment for back or joint pain aside from over-the counter medications. The claimant's complaints have been of relatively benign symptoms, if any, and he has not reported any significant limitations in functioning aside from pain with extended standing. As such, the record is devoid of the type of significant complaints or treatments that would be consistent with the claimant's alleged symptoms. . . .

For these reasons, the undersigned finds that the claimant's statements concerning the intensity, persistence, and limiting effects of his physical symptoms are not entirely consistent with the medical evidence and other evidence in the record. There is no dispute he should avoid extended periods of standing and walking due to his history of spinal fusion and the need to avoid cardiac stress. It is also reasonable to limit heavy lifting, postural activities, environmental exposures, handling, and fingering for the claimant's safety, given his surgical history, and due to his pain complaints. However, the evidence of record, taken as a whole, simply does not indicate that the claimant would have been unable to perform work within those parameters at any time since he attained age 18. The undersigned therefore finds that a limitation to sedentary work with additional postural and environmental limitations adequately accommodates the claimant's physical impairments since age 18.

(*Id.* at 19-20.)

In sum, I find that the ALJ appropriately discounted Claimant's subjective allegations of disability because the ALJ found inconsistencies in the evidence as a whole and considered the *Polaski* factors. *See Wildman*, 596 F.3d at 968-69. Moreover, contrary to Claimant's arguments, the ALJ thoroughly explained his reasoning for discounting Claimant's subjective allegations of disability, in particular addressing the inconsistencies in the medical evidence. Significantly, Claimant in is brief fails to point out any deficiencies in the ALJ's reasoning and fails to offer any specifics or identify any

medical evidence calling the ALJ's thorough analysis into question. As such, I find the ALJ did not err in discounting Claimant's testimony or his allegations because substantial evidence as a whole supported the ALJ's credibility determination. It is not for this Court to reweigh evidence. Thus, I recommend the District Court affirm this part of the ALJ's decision.

## B.      RFC and Record Development

### 1.      Parties' Arguments

Claimant argues that the "testimony regarding his pain, discomfort, and social anxiety, as well as the opinions and findings of the treating and evaluating physicians clearly illustrate that [Claimant] is unable to perform even a limited range of sedentary work." (Doc. 7 at 24.) Claimant maintains that the ALJ "offered no . . . supportive medical evidence, and the medical evidence of record clearly does not support a conclusion that he would be capable of performing a limited range of sedentary work." (*Id.* at 25.) Claimant focuses on the opinions of two consultative examining sources, Dr. Taylor and Dr. Freeman, and asserts that the opinions of these doctors "explicitly address the nature and severity of [Claimant's] impairments, are supported with detailed explanations for their opinions, are well supported by the medical evidence of record, are in no way inconsistent with the other substantial evidence in the case record and are not contradicted by any other medical source." (*Id.*) According to Claimant, the opinions of Dr. Taylor and Dr. Freeman "are consistent with, and are supported by the medical evidence or record, and they are not contradicted by any other medical source" and as a result, their opinions and findings "should have been accorded more weight than the ALJ chose to assign." (*Id.* at 25-26.) Claimant concludes that the ALJ's "findings and conclusions are not supported by substantial evidence and this case should be reversed and remanded[.]" (*Id.* at 26.)

16

Additionally, Claimant argues that the ALJ "neglected to fully and fairly develop the medical record." (*Id.*) Claimant contends that "[b]ased on the corroborative medical evidence of record, if the ALJ had any doubts regarding [Claimant's] condition, he could have ordered additional consultative examinations to either corroborate or dispute the opinions and findings of Dr. Taylor and/or Dr. Freeman." (*Id.*) Claimant suggests that the ALJ "failed to procure any medical evidence to support his conclusions" and this matter should be remanded for further development of the record. (*Id.* at 27.)

The Commissioner argues that the "ALJ's decision adequately evaluated all of [Claimant's] impairments." (Doc. 11 at 11.) The Commissioner points out the lengthy and thorough medical evidence that the ALJ considered in his decision. (*Id.* at 12-14.) The Commissioner contends that "[a]lthough [Claimant] claims that the consultative opinions are consistent with and supported by the medical evidence of record . . . [Claimant] points to no such supporting evidence." (*Id.* at 17.) Similarly, the Commissioner argues that "while [Claimant] also claims that the consultative examiners' opinions were corroborated by the opinions of his treating physicians, he does not identify any such opinion." (*Id.*) The Commissioner also argues that Claimant "does not attempt to explain how the limitations already included in the RFC did not account for his impairments, nor did he offer any purported limitation that was established in the record that was not included in the RFC, or point to any examination finding establishing additional functional limitations." (*Id.* at 17-18.) The Commissioner asserts that Claimant "has not met his burden to point to evidence in the record establishing limitations greater than those already accounted for by the ALJ in the RFC." (*Id.* at 18.) The Commissioner concludes that the "ALJ cited extensively to the record and included supported limitations in the RFC" and "[b]ecause the evidence substantially supports the ALJ's decision, the Court should affirm." (*Id.* at 22.)

17

## 2. *Pertinent Medical Evidence*

On December 17, 2021, Claimant was referred by Disability Determination Services ("DDS") to Dr. Ashley H. Freeman, Ph.D., for a psychological report. At the examination, which was performed online due to the COVID-19 pandemic, Claimant's primary complaint was "'I don't like talking to people and it's hard for me to do physical things.'" (AR at 1712.) Dr. Freeman's general observations were as follows:

> [Claimant] was cooperative. No involuntary movements were observed. He appeared to be dressed casually. Level of effort was good.
>
> Volume and rate of speech were within normal limits. Thought process was normal. Thought content appeared consistent with reality. No perceptual abnormalities were observed. Affect was appropriate to the situation. Mood appeared dysphoric and anxious. He was tearful at the beginning of the exam after being asked his reason for claiming disability. He took a brief pause and left the video screen to grab a tissue. His mother stated, "His nerves take over." When asked about suicidal ideation, he became tearful and took another break from the video to grab a drink of water at his mother's encouragement. He looked at his mother before responding to most questions and frequently responded with "I don't know." He was a very poor historian regarding dates and details of his history.

(*Id.* at 1715.) Dr. Freeman diagnosed Claimant with social anxiety disorder and noted that he was "visibly anxious throughout the exam and had difficulty responding and answering questions." (*Id.* at 1716.) Dr. Freeman opined that Claimant's prognosis was guarded and found that his "psychological problems are longstanding, pervasive, and chronic." (*Id.*) Dr. Freeman noted that Claimant "does not see a therapist and is not taking any psychiatric medications. A medical evaluation with a psychiatrist is recommended. Treatment compliance is recommended." (*Id.*) Dr. Freeman concluded that Claimant: (1) "possesses the mental capacity to perform simple and repetitive tasks as well as complex and detailed tasks"; (2) "should not experience impairment in

18

consistent job performance due to psychosis or a thought disorder"; (3) "should not require additional or special supervision for performance of most tasks"; (4) "was able to carry out instructions, maintain attention, concentration, and pace"; (5) "will have impairment interacting appropriately with supervisors, co-workers, and the public due to his social anxiety"; (6) "will likely experience interruptions in his ability to complete a normal workday or workweek due to his social anxiety"; and (7) "will very likely experience impairment dealing with the usual stresses encountered in competitive work due to his social anxiety." (*Id.* at 1717.) Dr. Freeman also opined that "it is suspected [Claimant's] anxiety would be significant enough when in a work setting or when around people that his functioning in these areas would be impaired." (*Id.*)

On April 18, 2022, Claimant was referred by DDS to Dr. Dr. Mark C. Taylor, M.D., for a consultative examination. In reviewing Claimant's complaints, Dr. Taylor noted that:

> Since the spinal fusion, he has difficulties standing or walking for too far. When he sits, he finds it beneficial to lean forward, which was noted when I entered the room and he remained in that position until we had him move to the examination table. He also described chronic chest pain and he has followed with a cardiologist, Dr. Zittergruen. He also notices neck pain if he looks down, such as when rinsing dishes. His feet hurt if he stands for very long. The records also mentioned severe anxiety. His affect was quite flat and he did not talk a lot, but he answered questions appropriately. . . .
>
> As far as the chest and back pain, when the pain increases up to 3 or 4/10, he then sits down, or even opts to lie down in the bed or on the couch. At times, the pain can worsen but it is fairly random.

(AR at 1849.) Upon examination, Dr. Taylor opined that Claimant could sit frequently but "must be able to lean forward and to change positions when needed." (*Id.* at 1852.) Due being on blood thinners for the aortic root repair, Dr. Taylor also opined that Claimant must "avoid activities that would place him at risk for head trauma or significant

injuries or bleeding due to the blood thinner." (*Id.* at 1853.) Further, Dr. Taylor opined that due to surgery related to scoliosis, Claimant is limited in bending, lifting (20 pounds occasionally), carrying, and climbing. (*Id.*) Based on foot problems, Dr. Taylor opined that it would be difficult for Claimant to "perform a job that requires standing or walking for significant periods of time." (*Id.*)

### 3. Relevant Law

The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803. Relevant evidence for determining a claimant's RFC includes "medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations." *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007).

The ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007). "There is no bright line rule indicating when the [ALJ] has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008).

To the extant that Claimant raises concerns with the ALJ's consideration of Dr. Taylor's and Dr. Freeman's opinions, under the rules, no medical opinion is automatically given controlling weight. 20 C.F.R. § 404.1520c(a). Opinions from medical sources are evaluated using the following factors: (1) supportability, (2) consistency, (3) provider's relationship with the claimant, (4) specialization, and (5) other factors. *Id.* § 404.1520c(c). Supportability and consistency are the most important factors when determining "how persuasive the ALJ find[s] a medical source's medical

opinions . . . to be." Id. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how [he or she] considered the factors in paragraphs (c)(3) through (c)(5). . . ." *Id*.

Supportability concerns the internal consistency that a source's opinion has with the source's own findings and notes. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Consistency concerns the external consistency that the source's opinion has with the findings and opinions of other sources. "The more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." 20 C.F.R. § 404.1520c(c)(2).

### 4. *Analysis*

First, Claimant's statement that the ALJ "offered no . . . supportive medical evidence, and the medical evidence of record clearly does not support a conclusion that he would be capable of performing a limited range of sedentary work," *see* Doc. 7 at 25, makes me question whether Claimant carefully read the ALJ's decision. As discussed extensively above, the ALJ thoroughly and exhaustively reviewed the medical evidence in the record and cited to the record where appropriate in determining Claimant's RFC and ultimately whether Claimant met the requirements for disability under the five-step sequential evaluation. *See* AR at 16-21. Second, Claimant's statement that "testimony regarding his pain, discomfort, and social anxiety, as well as the opinions and findings of the treating and evaluating physicians clearly illustrate that [Claimant] is unable to perform even a limited range of sedentary work," *see* Doc. 7 at 24, is merely conclusory and the Commissioner correctly points out that Claimant does not identify any such opinions, even those of Dr. Taylor and Dr. Freeman, any such medical records, or any

such findings which support greater limitations than those already included in the ALJ's RFC determination.

As for Dr. Taylor's and Dr. Freeman's opinions, the ALJ considered and addressed their opinions as follows:

> Consultative examiner Dr. Mark Taylor concluded that the claimant could lift up to 20 pounds occasionally, sit on a frequent basis, and stand/walk on rare-to-occasional basis (16F). He also opined, among other things, that the claimant would need to alternate sitting, standing, and walking as needed for comfort (16F). These opinions were supported by Dr. Taylor's clinical findings, specifically his observation that the claimant leaned forward while sitting. However, there are not other similar findings by other medical personnel. Moreover, Dr. Taylor's assertion that the claimant may be capable of only "rare" standing and walking is inconsistent with the unremarkable findings upon examination. Therefore, because the opinions of Dr. Taylor are not entirely consistent with the record as a whole, they have somewhat limited persuasive value. . . .
>
> Consultative examiner Ashley Freeman, Ph.D., opined that the claimant could perform simple, complex, and detailed tasks but that he would have limitations on concentration, pace, and social interaction in the work setting (10F). In addition, the social limitations Dr. Freeman imposed are consistent with the abnormalities observed by other medical personnel (4F; 16F; 17F). However, to the extent Dr. Freeman concluded that the claimant could not sustain competitive, full-time work, her opinions are inconsistent with the claimant's activities of daily living, his limited mental health treatment, and the fact that no medical personnel have observed significant limitations in memory, concentration, or focus (see, generally, 2F/1-45; 4F; 5F; 9F/1-29; 10F; 14F; 16F; 17F; 18F; hearing testimony; 5E). The opinions of Dr. Freeman have somewhat limited persuasive value.

(AR at 20-21.) In support of these conclusions, the ALJ thoroughly reviewed Claimant's medical history and pointed to evidence throughout the record where Dr. Taylor's and Dr. Freeman's opinions were inconsistent with the record as a whole. (*Id.* at 16-21.) Therefore, based on the foregoing, I find that the ALJ both properly considered Dr.

Taylor's opinions and Dr. Freeman's opinions and properly addressed the consistency and supportability of Dr. Taylors's and Dr. Freeman's opinions. The ALJ also properly supported his conclusions that both Dr. Taylor's and Dr. Freeman's opinions were not consistent with the record as a whole and were not adequately supported by objective medical findings in the record. Even if different conclusions could be drawn on this issue, the conclusions of the ALJ should be upheld because they are supported by substantial evidence on the record as a whole. *See Guilliams*, 393 F.3d at 801. It is not for this Court to reweigh evidence. Thus, I conclude that the ALJ properly evaluated both Dr. Taylor's and Dr. Freeman's opinions.

Furthermore, in determining Claimant's RFC, the ALJ thoroughly addressed and considered Claimant's medical history and treatment for his complaints. (AR at 16-21.) The ALJ also properly considered and discussed Claimant's subjective allegations of disability in making his overall disability determination, including determining Claimant's RFC, finding that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.* at 16.)

Therefore, having reviewed the entire record, I find that the ALJ properly considered Claimant's medical records, observations of treating physicians, and Claimant's own description of his limitations in making the ALJ's RFC assessment for Claimant. *See Lacroix*, 465 F.3d at 887. Further, I find that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, I conclude that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803. Even if different conclusions could be drawn on this issue, the conclusions of the ALJ should be upheld because they are supported by substantial evidence on the record

as a whole. *See id.* at 801. It is not for this Court to reweigh evidence. Accordingly, I recommend that the District Court affirm this part of the ALJ's decision.

### IV.    CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **AFFIRM** the decision of the ALJ.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to de novo review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 7th day of March, 2025.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa

24